OPINION OF THE COURT
Titone, J.
A waiver of immunity obtained in violation of a Grand Jury witness’ State constitutional right to counsel (NY Const, art I, § 6) is not an effective waiver within the meaning of CPL *499 190.40 (2) (a). Accordingly, where a Grand Jury witness testifies under such a constitutionally defective waiver, the witness, whether voluntary or compelled, receives the automatic transactional immunity conferred by that statute and cannot thereafter be prosecuted for any matter on which responsive testimony has been given (CPL 50.10 [1]; see, Matter of Rush v Mordue, 68 NY2d 348).
The accusatory phase of the present criminal action began on November 23, 1983, when a felony complaint was filed against defendant, leading to an arraignment at which defendant was represented by retained counsel. Several months after the arraignment, however, defendant’s counsel was relieved by court order, in part because defendant was apparently unable to pay his legal fees.
Having received a forwarded notice that his case would be presented to a Grand Jury, defendant appeared, unrepresented, on the scheduled date and indicated to the Assistant District Attorney handling the matter that he wished to testify. In response to the presiding Judge’s question whether he wished to testify without the advice of counsel, defendant stated only that he was unable to afford an attorney. Rather than pursuing the inquiry, the court shifted subjects, explaining to defendant that he would have to sign an irrevocable waiver of immunity before he would be permitted to testify, that he would then be required to answer every question posed, that his testimony could later be used against him and that he might regret his decision "[d]own the road.” When defendant told the court that he felt that he had to testify to “clear up” the matter, the court simply admonished him not to take the matter "too lightly” and wished him “good luck.” Following this discussion, defendant signed an immunity waiver.
Appearing before the Grand Jury promptly after this colloquy, defendant stated that he had not discussed his decision to testify with an attorney, although he acknowledged that he did understand the significance of the immunity waiver as it was explained to him by the Judge. Defendant also stated, in response to a question, that he had not been aware of his right to have counsel present in the Grand Jury room during his testimony (see, CPL 190.52). Once again, there was no further exploration of whether defendant wished to proceed without counsel or any discussion of the possibility of assigning an attorney if defendant were unable to retain one. *500 Rather, defendant was immediately sworn and asked to resign and swear to the immunity waiver in the Grand Jury’s presence (see, CPL 190.45 [1], [2]). He then testified concerning the incidents that were the subject of the Grand Jury’s inquiry.
Following the Grand Jury’s issuance of an indictment, defendant made a dismissal motion, arguing that his immunity waiver should be deemed ineffective because it was obtained in violation of his right to counsel. The trial court agreed with this position and, concluding that transactional immunity had consequently been conferred, dismissed the indictment without leave to the People to resubmit. On appeal by the People, however, the Appellate Division modified by granting the People permission to seek a new indictment before another Grand Jury. Although that court concurred in the conclusion that the indictment before it was tainted by defendant’s uncounseled immunity waiver, it rejected the contention that the constitutional infirmity rendered the waiver ineffective, resulting in a complete bar to prosecution under the transactional immunity provisions of CPL 50.10 and 190.40. Instead, the court held, it was only the further use of the uncounseled testimony that was prohibited, and the People were entitled to pursue the prosecution if they had sufficient independent evidence of defendant’s guilt. We conclude that the Appellate Division was in error and that its order must be reversed.
Initially, it is undisputed, and indeed is beyond dispute, that the circumstances surrounding defendant’s execution of the immunity waiver and his subsequent Grand Jury testimony constituted a violation of his State constitutional right to the assistance of counsel at every critical stage of the proceeding (NY Const, art I, § 6). Regardless of whether he was actually represented at the time he appeared before the Grand Jury, defendant’s indelible right to counsel had attached when the felony complaint against him was first filed (see, People v Samuels, 49 NY2d 218; cf., CPL 190.52 [conferring waivable right to advice of counsel during testimony before the Grand Jury]), and that right continued throughout the criminal proceeding, notwithstanding the order relieving the specific attorney who had represented him at arraignment. Indeed, since defendant had already been accused of a serious crime, his appearance before the Grand Jury was unquestionably an occasion "when legal advice is most critically needed” (People v Settles, 46 NY2d 154, 164). Accordingly, neither his uncoun *501 seled waiver of the right to such legal advice nor his immediately ensuing waiver before the Grand Jury of his statutory right to immunity may be deemed to be valid renunciations of those rights under the State Constitution.
Furthermore, the taint resulting from the absence of counsel was not mitigated by the limited judicial intervention that occurred in this case. Although the Judge presiding over the Grand Jury proceedings informed defendant of the consequences of waiving his right to remain silent, no mention was made of the importance of independent legal counsel or the imprudence of making the decision to appear and testify without first obtaining the advice of a trained, experienced attorney. In light of these omissions, it can hardly be said that the court’s inquiry was sufficiently searching to assure that any waiver of the right to counsel that may have occurred was made intelligently and with full knowledge of the " 'dangers and disadvantages’ ” of forgoing constitutional protection (cf., People v Sawyer, 57 NY2d 12, 21; People v White, 56 NY2d 110).[1] To the contrary, defendant’s evident lack of understanding, as reflected by his statements that he could not afford an attorney and that he was unaware of his right to have the advice of counsel during his testimony, suggests that any waiver may well have been made in ignorance of the protections that the Constitution and the statutes afford (see, NY Const, art I, § 6; CPL 190.52 [l]).[2]
Having concluded that defendant’s State constitutional right to counsel was violated and that his waiver of immunity was the tainted fruit of that violation, we further conclude that the immunity waiver was ineffective for all purposes, including the application of CPL 190.40 (2) (a), the keystone of our modern immunity rules. Enacted to eliminate the confusing thicket of decisional law and overlapping legislative provisions *502 that had evolved both before and after the enactment of the predecessor provision (former Penal Law § 2447, subsequently superseded by Code Crim Proc § 619-c; see, People v Williams, 81 AD2d 418, affd 56 NY2d 916), CPL 190.40 now provides that every Grand Jury witness who gives responsive testimony automatically receives full transactional immunity unless he has "effectively waived such immunity.”
The People have argued that the effectiveness of a waiver under this provision should be determined exclusively by reference to CPL 190.45, which prescribes the formal requisites for immunity waivers and delineates certain specific instances in which such waivers must be deemed ineffective.[3] In essence, the People argue, a waiver is ineffective and transactional immunity is consequently conferred if, and only if, the subscribed waiver was not properly sworn to before the Grand Jury (CPL 190.45 [2]) or a witness whose appearance was compelled was not adequately informed of his right to the assistance of counsel (CPL 190.45 [3]). In all other circumstances, the People contend, the immunity waiver is "effective” within the meaning of the statute, and any defects or improprieties in the manner in which it was procured must be redressed through such constitutionally mandated remedies as suppression or use immunity.
We decline, however, to adopt this restrictive view, since it would leave the voluntary target-witness without meaningful protection. Our State’s immunity statutes were designed to strike a fair balance between the government’s legitimate need to gather evidence and society’s equally compelling need to afford full protection to the witness whose constitutional rights are in jeopardy (see, Bellacosa, Practice Commentary, McKinney’s Cons Laws of NY, Book 11A, CPL 190.40, at 244-246). Moreover, the statutory rules governing the substitution of immunity for the witness’ constitutional privilege "must be interpreted liberally in order that the individual’s rights are adequately guarded” (People v Williams, 81 AD2d, at 422, supra).
*503 In this context, we conclude that in order to safeguard the rights of individuals who have already been accused, CPL 190.40 (2)’s requirement of an "effective” waiver must be construed to mean a waiver obtained under circumstances that are fully consistent with the witness’ State constitutional right to counsel (see, People v Samuels, 49 NY2d 218, supra; cf., People v Dunbar, 53 NY2d 868). Indeed, in light of the special solicitude with which we have historically treated that right (see, e.g., People v Cunningham, 49 NY2d 203, 207; People v Hobson, 39 NY2d 479; see also, People v Velasquez, 68 NY2d 533, 536-537), it would be anomalous for us now to recognize an effective waiver of the important protections afforded by our immunity statutes without first assuring that the witness’ constitutional right to counsel had been scrupulously honored.
Contrary to the People’s argument and in contrast to the apparent distinction created in CPL 190.45 (3) and 190.52 (l),[4] the State constitutional guarantee of the right to counsel admits of no distinction between voluntary and compelled witnesses. While witnesses whose appearance has been compelled may be the ones most obviously in need of protection, we cannot ignore the equally compelling need to ensure the protection of those who, like defendant, appear voluntarily, perhaps in the hope of exonerating themselves or obtaining leniency through a sympathetic presentation (cf., People v Settles, supra, at 163). Accordingly, where, as here, the right to counsel has already attached by virtue of a previously filed accusatory instrument (see, People v Samuels, supra), the accused’s statutory immunity rights cannot effectively be waived unless the strictures of the State constitutional guarantee have been observed.
In this case, our conclusion that defendant’s waiver of immunity was ineffective because it was obtained in violation of his State constitutional right to counsel compels the further *504 conclusion that the indictment against him should have been dismissed with prejudice. The dissenters’ suggested remedy of suppression is not adequate to redress the constitutional violation that occurred here. Transactional immunity was automatically conferred when defendant testified before the Grand Jury without having executed an effective waiver (CPL 190.40 [2]), and he thereafter could not be prosecuted for "any transaction, matter or thing concerning which he gave evidence” (CPL 50.10 [1]). Since it is undisputed that defendant’s Grand Jury testimony concerned the subject matter of the indictment, the Appellate Division erred in authorizing resubmission of the charges.
For all of the foregoing reasons, the order of the Appellate Division, insofar as it authorized resubmission of the charges to a new Grand Jury, should be reversed and the order of the trial court dismissing the indictment with prejudice reinstated.

.Since the court’s inquiry was clearly inadequate in this case, we need not decide whether a truly searching judicial inquiry would have sufficed as a substitute for the presence and independent advice of a retained or assigned attorney at this early pretrial phase of the proceeding (cf., People v Sawyer, 57 NY2d 12).

.We note that the record does not even support a conclusion that an unequivocal waiver of the right to counsel occurred. Defendant never stated, either before the presiding Judge or the Grand Jury, that he did not want the aid of an attorney. Rather, he merely told the Judge that he was unable to afford one. Far from indicating an unequivocal wish to proceed pro se, this comment suggests that defendant may well have welcomed the advice of counsel had he known that a court-appointed attorney would be provided if he were financially unable to retain one (see, CPL 190.52 [1]).

.Subdivision (1) of CPL 190.45 requires that the waiver be in writing. Under subdivision (2), even a written waiver is "not effective unless and until it is sworn to before the grand jury”. Subdivision (3) describes the rights of individuals specifically called by the People and asked to execute an immunity waiver, with express provision made for the invalidity of the waiver if those rights are not observed. Finally, subdivision (4) concerns limited waivers, which are invalid to the extent that the questioning exceeds the waiver’s agreed-upon scope.

.Under CPL 190.45 (3), "[a] person who is called by the people as a witness in a grand jury proceeding and requested by the district attorney [to waive immunity] has a right to confer with counsel before deciding whether he will comply with such request,” and "[a]ny waiver obtained * * * in violation of [that requirement] is invalid and ineffective.” In contrast, under CPL 190.52 (1), "[a]ny person who appears as a witness and has signed a waiver of immunity” is entitled to the assistance of assigned or retained counsel in the Grand Jury room, but no provision is made for mandatory advisement of that right or for invalidation of the waiver if the right is not observed.