OPINION OF THE COURT
Dan Lamont, J.
The indictment accuses the defendant of the crimes of grand larceny in the second degree, grand larceny in the third degree, misuse of food stamps, and offering a false instrument *45 for filing in the first degree. The charges are that defendant between the dates of July 1, 1986 and June 16, 1987 did obtain public assistance, food stamps and medical assistance to which he was not entitled by falsely representing to the Schoharie County Department of Social Services that he was not employed and had no sources of income, when in fact he was employed and did have weekly income.
Defendant in his omnibus motion has requested an order dismissing the indictment upon the ground that he received immunity from prosecution as a result of his testimony before the Grand Jury on or about October 9, 1987. For the reasons which follow, this court holds and determines that defendant’s motion must be granted and the indictment against defendant dismissed.
On April 20, 1987, defendant gave an incriminating written statement to investigators with the Schoharie County Department of Social Services. Defendant was not thereafter arrested nor charged with a crime in a local criminal court.
In late September or early October 1987, defendant was personally served with a subpoena dated September 28, 1987 commanding him to appear as a witness before the Grand Jury of the County of Schoharie on the 9th day of October 1987 at 9:00 a.m.
An examination of the stenographic transcript of the proceedings before the Grand Jury clearly reveals that defendant was a target of the Grand Jury investigation, along with one Alfredo Liardo, and also Franko and Maritza Liardo.
A review of the Grand Jury minutes clearly indicates that the District Attorney was then under the mistaken impression that defendant had requested the opportunity to appear before the Grand Jury. The District Attorney informed both the grand jurors and the defendant that defendant had requested an opportunity to come before the Grand Jury. The District Attorney thereafter requested the defendant to subscribe and swear to a waiver of immunity before giving testimony. The defendant at one point stated: "Well, I understood I was here to testify against Alfredo, to be a witness”.
Although the District Attorney did advise defendant of his right to confer with counsel before deciding whether or not to execute a waiver of immunity, the defendant was misinformed that if he wanted a reasonable time to obtain and confer with counsel, "then we would have you say you couldn’t testify because we couldn’t get you an attorney that quickly.”
*46 ISSUES PRESENTED
1) Can a "target” of a Grand Jury investigation be subpoenaed to testify before the Grand Jury and then requested to sign a waiver of immunity?
New York State’s immunity statutes were designed to strike a fair balance between the government’s legitimate need to gather evidence and society’s equally compelling need to afford full protection to the witness whose constitutional rights are in jeopardy (People v Chapman, 69 NY2d 497, 502 [1987]; see, Bellacosa, Practice Commentary, McKinney’s Cons Laws of NY, Book 11A, CPL 190.40, at 244-246).
The price to society for seeking and compelling otherwise constitutionally protected testimony is the automatic conferral of transactional immunity (People v Williams, 56 NY2d 916 [1982], affg on opn of Hopkins, J., 81 AD2d 418 [2d Dept 1981]).
A review of the Grand Jury minutes in this case compels the conclusion that defendant’s testimony was essential for the Grand Jury to have reasonable cause to believe that Alfredo Liardo, Franko Liardo, and Maritza Liardo had committed the crimes with which they are charged in separate indictments.
Although defendant in his motion papers did not specifically raise the issue of "target” immunity, this court has serious misgivings as to whether a target-witness whose appearance is compelled can then be requested to sign a waiver of immunity, rather than receive automatic immunity for compelled testimony.
The concept of "target” immunity derives from section 6 of article I of the NY Constitution which provides in part as follows: "No person shall be * * * compelled in any criminal case to be a witness against himself’.
The case law construing section 6 of article I holds that where the target of án investigation is called before a Grand Jury, rather than a mere witness, in order to compel testimony, an automatic . grant of immunity must be conveyed (People v Yonkers Contr. Co., 17 NY2d 322; People v Laino, 10 NY2d 161; People v Steuding, 6 NY2d 214; People v De Feo, 308 NY 595).
The conferral of automatic immunity for Grand Jury witnesses (CPL 190.40) is a creature of the Criminal Procedure Law enacted in 1970. CPL 190.40 confers automatic immunity *47 for all compelled testimony regardless of the status of the party called.
As to the issue of whether or not the concept of "target” immunity became extinct with the advent of the Criminal Procedure Law, this court has found particularly instructive the excellent discussion of Justice Lawrence J. Tonetti in the case of People v Zelmanowicz (93 Misc 2d 491 [Sup Ct, Bronx County 1978]) wherein he wrote as follows (at 494-495):
"this court is of the opinion that the concept of 'target’ immunity became extinct with the advent of the Criminal Procedure Law. All cases dealing with 'target’ immunity construe statutes that did not provide automatic immunity for compelled testimony. Typically, a subpoenaed party, regardless of whether he be a witness or possible defendant, would have to assert his privilege in response to a given question to gain immunity. Juxtaposed against these statutes was the State Constitution guaranteeing that '[n]o person shall * * * be compelled in any criminal case to be a witness against himself (NY Const, art I, §6). In order to reconcile the statutes and the State Constitution, the courts formulated the 'target’ immunity rule whereby a subpoenaed witness would have to assert his privilege but a 'target’ would receive automatic immunity, since he could not be compelled to be a witness against himself. Instructive in this area is the Court of Appeals decision in People v Steuding (supra), the lead case on 'target immunity’, which construes the old Penal Law. The court states in Steuding (p 217): 'Section 2447 of the Penal Law, which prescribes the method by which an "immunity” may be conferred upon "witnesses,” is unquestionably constitutional and valid, insofar as it is applied to witnesses who are, in truth and fact, witnesses. The statute does not apply in terms to a defendant or to one who is in the shoes of a defendant, insofar as it provides that the burden is cast upon him of claiming privilege, and any attempt to invoke it against such a person would offend against the constitutional provision’.
"CPL 190.40 confers automatic immunity for all compelled testimony regardless of the status of the party called. As there is no burden cast upon anyone to assert the privilege, it being automatically conferred, the provision of the former statute which offended the State Constitution with regard to 'targets’ has been eliminated and there is no viability for continuing the dichotomy of treatment for 'targets’ as opposed to witnesses.”
*48 In the Zelmanowicz (supra) case, the prosecutor had issued a subpoena duces tecum requiring defendant to produce certain business books and records. On the return date of the subpoena, defendant Zelmanowicz appeared before the Grand Jury, turned over one book, and stated his name and address for the record. He thereafter unsuccessfully claimed "target” immunity.
Under the facts and circumstances of this case, this court is not entirely convinced that the concept of "target” immunity became extinct with the advent of the Criminal Procedure Law. An unrepresented, uncharged "target witness” subpoenaed to testify before a Grand Jury clearly appears under testimonial compulsion — perhaps even expecting to receive immunity — and when unexpectedly requested to sign a waiver of immunity, he is clearly placed in just as unfamiliar and difficult a predicament as a pre-1970 "target-witness” required to assert his Fifth Amendment privilege to given questions in order to obtain immunity.
The subpoena itself represents a form of compulsion (People v Laino, supra, at 170-171). It would seem that the categories of subpoenaed "target-witness” testimony on the one hand, and waivers of immunity on the other hand, should be mutually exclusive.
How can an uncounseled, "target-witness” whose appearance is compelled under power of subpoena then be requested in front of 16 to 23 grand jurors to waive immunity in the face of article I, § 6 of the NY Constitution or under principles of fundamental fairness?
The Court of Appeals in People v Davis (49 NY2d 910 [1980]) made the following statement in a Per Curiam opinion: "It is settled law that no constitutional error is involved in requiring one who is a Grand Jury target to appear before that body and claim privilege (United States v Wong, 431 US 174, 179, n 8; United States v Washington, 431 US 181; see Matter of Cunningham v Nadjari, 39 NY2d 314; Matter of Boikess v Aspland, 24 NY2d 136; People ex rel. Hummel v Davy, 105 App Div 598, 603, affd without reaching the point 184 NY 30). While we agree that the better practice is not to do so (see American Bar Association Standard Relating to the Prosecution Function, Standard 3-3.6 [e]), the prosecutor’s having done so furnishes no basis for dismissal of the indictment (see People v Calbud, Inc., 49 NY2d 389)” (supra, at 911-912).
In this case, the defendant "target-witness” was subpoenaed *49 and examined before the Grand Jury. He did not claim privilege. If he had refused to waive immunity, the indictment against him would clearly not be subject to dismissal. (See, People v Davis, supra.) On the other hand, he was compelled to appear before the Grand Jury, requested to execute a waiver of immunity, and then testified as a witness against himself.
Although an ordinary witness whose appearance was compelled or a voluntary "target-witness” can clearly waive immunity, this court believes that a subpoenaed "target-witness” should receive "target” immunity, and cannot in the face of section 6 of article I of the NY Constitution be compelled to appear before a Grand Jury as a witness against himself and then be requested to subscribe a waiver of immunity and be examined as a witness against himself.
2) Does the right to legal counsel "indelibly” attach when a target-witness is subpoenaed to testify before the Grand Jury and requested to execute a waiver of immunity?
In People v Samuels (49 NY2d 218 [1980]), a unanimous Court of Appeals held that the mere filing of a felony complaint commences a judicial proceeding and causes the right to legal counsel to indelibly attach. In Samuels (supra), the Court of Appeals stated: "The defendant is entitled to counsel at all critical stages of the criminal prosecution (People v Settles, 46 NY2d 154, 165). The right to counsel attaches, of course, once the criminal action has been commenced (see, e.g., People v Blake, 35 NY2d 331, 339-340). But it may also attach at an earlier stage if there has been significant judicial activity. Thus, for instance, a court order permitting the police to bring the defendant to the scene of the crime (People v Sugden, 35 NY2d 453, 461) or directing that he appear in a lineup (People v Coleman, 43 NY2d 222) may be sufficient to trigger the right to counsel even though the criminal action may not have formally commenced” (at 221).
When an unrepresented involuntary "target witness” is compelled to appear before a Grand Jury pursuant to a subpoena and requested to sign a waiver of immunity, this court has little difficulty concluding that defendant is confronted with a "critical stage” of the proceedings against him. Defendant’s appearance before the Grand Jury was unquestionably an occasion "when legal advice is most critically needed” (People v Settles, 46 NY2d 154, 164 [1978]).
The compulsory production of a defendant "target” of the *50 Grand Jury investigation represents testimonial compulsion and constitutes "significant judicial activity” for defendant’s right to counsel to "indelibly attach” (see, e.g., People v Samuels, supra; People v Settles, supra). A Grand Jury is empaneled by a superior court. The subpoena represents the compulsory process of the Grand Jury as well as the District Attorney.
This court holds and determines that a "target-witness” whose appearance before, the Grand Jury is compelled by a subpoena is faced with proceedings which have clearly moved from the investigatory to the accusatory stage, and when confronted before some 16 to 23 grand jurors with a request that he subscribe a written waiver of immunity, the subpoenaed "target-witness” is confronted with a "critical stage” of a criminal prosecution such that he cannot waive his right to the assistance of counsel except in the presence of counsel.
Accordingly, this court holds and determines that the written waiver of immunity subscribed by defendant in the absence of counsel was ineffective because it was obtained in violation of his State constitutional right to counsel, and the indictment against him must be dismissed with prejudice. Transactional immunity was automatically conferred upon defendant when he testified before the Grand Jury without having executed an effective waiver (CPL 190.40 [2]; see, People v Chapman, 69 NY2d 497, 503-504, supra).
3) Did the defendant knowingly and intelligently waive his right to legal counsel and knowingly and intelligently execute an effective waiver of immunity?
Defendant’s evident lack of understanding as reflected in his statements suggests that any waiver of legal counsel may well have been made in ignorance of the protections that the Constitution and the statutes afford (see, NY Const, art I, §6; CPL 190.52 [1]).
A person called by the People as a witness in a Grand Jury proceeding and requested by the District Attorney to subscribe and swear to a waiver of immunity before giving evidence has a right to confer with counsel before deciding whether he will comply with such request, and must be accorded a reasonable time in which to obtain and confer with counsel for such purpose (CPL 190.45 [3]).
Defendant was subpoenaed to testify, and then told that if he wanted an adjournment to confer with counsel before *51 executing a waiver of immunity, the Grand Jury would not hear his testimony.
The Court of Appeals has recently held that a voluntary "target-witness” who executed a waiver of immunity in the absence of legal counsel received transactional immunity when a felony complaint had previously been filed against him (People v Chapman, 69 NY2d 497 [1987], supra). The court held that a waiver of immunity obtained in violation of a Grand Jury witness’s State constitutional right to counsel (NY Const, art I, § 6) is not effective waiver within the meaning of CPL 190.40 (2) (a), and where a Grand Jury witness testifies under a constitutionally defective waiver, the witness whether voluntary or compelled, receives automatic transactional immunity (People v Chapman, supra).
Furthermore, the District Attorney’s mistaken impression that the defendant had appeared voluntarily — whereas defendant correctly understood that he was there under subpoena to testify against Alfredo Liardo as a witness — certainly rendered a knowing and intelligent waiver of the right to counsel and a knowing, intelligent, understanding, and effective waiver of immunity by defendant somewhat problematical to say the least.
This court holds and determines that defendant did not knowingly and intelligently waive his right to legal counsel nor did he knowingly and understandingly execute an effective waiver of immunity.
CONCLUSION
The defendant’s waiver of immunity was ineffective because he was an involuntary "target-witness” who appeared before the Grand Jury under the testimonial compulsion of a subpoena, because an involuntary "target-witness” subpoenaed to testify before a Grand Jury and requested to execute a waiver of immunity is confronted by a critical stage in the criminal proceeding against him and cannot waive counsel in the absence of counsel, and because defendant’s waiver of his right to counsel was not knowingly and intelligently made nor did he execute an effective waiver of immunity.
In short, society obtained otherwise constitutionally protected testimony from defendant — incriminating himself and
*52 three other defendants — by compelling defendant’s appearance before the Grand Jury but neglecting and failing to pay the price of an automatic conferral of transactional immunity. (See, CPL 190.40; People v Williams, 56 NY2d 916, supra.)
The defendant has thus obtained transactional immunity and the indictment against him must be dismissed with prejudice.